400 S.E.2d 599

**Cynthia A. EFAW**

v.

**Timothy P. EFAW.**

**No. 19376.**

Supreme Court of Appeals of
West Virginia.

Dec. 17, 1990.

Scot S. Dierringer, Clarksburg, for Timothy P. Efaw.

James W. Martin, Jr., Bridgeport, for Cynthia A. Efaw.

PER CURIAM:

The appellant, Timothy Efaw, appeals from an October 2, 1989, final order of the Circuit Court of Doddridge County granting custody of his three infant children to their natural mother, appellee Cynthia Efaw. The appellant contends that he is entitled to custody of the three children, Alicia, Derek, and Jeremy Efaw. Upon review of the record, we find that the trial court abused its discretion in awarding custody to the appellee, Cynthia Efaw. Accordingly, we reverse the trial court's award of custody to the appellee and remand this case with directions that the custody of the three infant children be awarded to the appellant and with further

directions that the appellee be awarded extensive and meaningful visitation rights.

Timothy and Cynthia Efaw were married on August 9, 1979, in Marion County, West Virginia. Appellant Timothy Efaw subsequently entered the Air Force, and the couple was stationed at various locations over the next several years. The marriage produced three children, Alicia, born October 4, 1981, Derek, born March 30, 1985, and Jeremy, born July 15, 1986. In August or September, 1987, when the Efaws were stationed in Wiesbaden, Germany, the appellee began an adulterous relationship with Sergeant William Hanson, a military acquaintance of the appellant. The relationship began when Sergeant Hanson resided with the appellant's family while the appellant was temporarily reassigned to the United States.

On November 11, 1987, the appellee removed her three children from their home in Wiesbaden, Germany, and moved to Savannah, Georgia, near Sergeant Hanson's reassignment location in Augusta, Georgia. The appellee and the three infant children resided with friends in a one-bedroom apartment in Savannah, Georgia, prior to moving in with Sergeant Hanson in late November to early December, 1987.

On December 26, 1987, allegedly due to her financial distress, the appellee relinquished custody of her three infant children to their paternal grandparents, residing in Doddridge County, West Virginia. The appellee executed a power of attorney and the medical authorization in favor of the children's grandparents, effective for a period of three years.

Upon learning that his children had been deposited with his parents, the appellant attempted to obtain reassignment to the United States. Unable to acquire reassignment, the appellant resigned from the Air Force in February 1988, and returned to West Virginia to care for his children. When the appellee learned of his return, she requested that the children be returned to her custody in Georgia. The appellant refused to return the children.

The appellee filed divorce proceedings in Doddridge County, West Virginia, on June 22, 1988. In a hearing conducted on July 6, 1988, Family Law Master Corneila Reep declined to afford either parent the benefit of the primary caretaker presumption and awarded temporary custody to the appellant.

At the final custody hearing held before the Circuit Court of Doddridge County on June 30, 1989, the court found that the appellant had "demonstrated much greater care and love for the three children than the [appellee]." However, the court determined that it was bound by judicial precedent set forth by this Court to afford the appellee the benefit of the primary caretaker presumption. The court recognized that the children had resided in Doddridge County, West Virginia, for approximately eighteen months prior to the final custody hearing. The court found, however, that from their births to December 26, 1987, the date of relinquishment to their grandparents, the appellee had been the primary caretaker of the children. The court further found that from December 26, 1987, to February 1988, the grandparents had been the primary caretakers, and the appellant did not assume personal custody of his children until his return from military service in February 1988. The court felt compelled to afford the appellee the benefit of the primary caretaker presumption because she had assumed the role of primary caretaker prior to the initiation of divorce proceedings. The court further found that the appellee was not an unfit mother. Her relinquishment of the children to their paternal grandparents, the court held, was "only intended to be a temporary situation ..." until she could obtain financial independence. Consequently, the court awarded custody of the three children to the appellee, and the appellee transported the children to her home in Georgia on July 4, 1989.

In the final divorce decree entered by the Circuit Court of Doddridge County on October 2, 1989, custody of the three children was awarded to the appellee. The appellant petitioned this Court for appeal on November 13, 1989. The petition for appeal and a stay of execution pending final

resolution was granted by this Court on November 14, 1989. On December 7, 1989, the appellee moved this Court to vacate the November 14, 1989, stay. By order dated December 21, 1989, we denied the appellee's motion to vacate the stay. The appellant has retained custody of the children since that time. Thus, with the exception of an approximate six-month period during which the appellee maintained custody, the appellant has maintained custody of the three children from his February 1988 return from the military to the present.

■ This Court has repeatedly held that custody of children of tender years should be awarded to the primary caretaker of those children. In syllabus point 2 of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), we stated the following:

> With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit.

In syllabus point 3 of *Garska*, we stated that "[t]he primary caretaker is that natural or adoptive parent who, until the initiation of the divorce proceedings, has been primarily responsible for the caring and nurturing of the child." In *Garska*, we enumerated several duties which are encompassed within the definition of primary caretaker. These include such basic caretaking duties as preparation of meals, grooming, medical care, discipline, and education.[1] *See* 167 W.Va. at 69–70, 278 S.E.2d at 363. Once a determination of primary caretaker has been established, a presumption in favor of the primary caretaker attaches, and that party is entitled to

custody absent a showing that he or she is unfit. *See* 167 W.Va. at 68, 278 S.E.2d at 362.

■ "If the trial court is unable to establish that one parent has clearly taken primary responsibility for the caring and nurturing duties of a child neither party shall have the benefit of the primary caretaker presumption." Syl. Pt. 5, *Garska*, 167 W.Va. at 59, 278 S.E.2d at 357. Where, for instance, both parents have shared the primary caretaker duties equally or have divided the duties in such manner that neither has assumed the primary responsibility, neither party will be afforded the primary caretaker presumption. In such case, the analysis must be based upon the best interests of the children, "and the court must proceed to inquire further into relative degrees of parental competence." *Id.*, 167 W.Va. at 70, 278 S.E.2d at 363.

■ The primary caretaker status of an individual is to be determined on the basis of that individual's duties and responsibilities "until the initiation of the divorce proceedings." Syl. Pt. 3, in part, *Garska*, 167 W.Va. at 59, 278 S.E.2d at 357. In the present case, the lower court determined that the appellee was the primary caretaker prior to the initiation of the divorce proceedings in June 1988. The court further determined that the appellee's status as primary caretaker obligated the lower court to award custody to her. The record indicates, however, that the appellant and the appellee shared the duties of primary caretaker prior to the initiation of the divorce proceedings. The appellee was periodically employed for several months during the marriage. When she worked an evening shift or attended college classes, the appellant cared for the children after arriving home from work in the evening.

---

1. *Garska* specifically set forth the following examples of duties of primary caretaker:
   (1) preparing and planning of meals;
   (2) bathing, grooming and dressing;
   (3) purchasing, cleaning and care of clothes;
   (4) medical care, including nursing and trips to physician;
   (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings;
   (6) arranging alternative care, i.e. babysitting, day-care, et cet.;
   (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning;
   (8) disciplining, i.e. teaching general manners and toilet training;
   (9) education, i.e. religious, cultural, social, et cet.; and,
   (10) teaching elementary skills, i.e., reading, writing and arithmetic.
   167 W.Va. at 69–70, 278 S.E.2d at 363.

Persons described by the parties as nannies were also hired to care for the children during the appellee's employment hours. While the appellee testified that these persons had assumed some of the primary caretaker duties and that the appellant had also assisted in activities such as meals and laundry, she stated that she provided the majority of the care for the children, including meals, purchasing clothing, babysitting arrangements, medical care, and educational activities. The appellant testified that he shared equally in the primary caretaker duties and had control of the children during periods in which the appellee was working in the evenings or attending evening classes.

Even if the appellee had performed the majority of the primary caretaker duties prior to her separation from the appellant, she voluntarily relinquished custody of the children to their paternal grandparents on December 26, 1987, and consequently ceased the performance of those duties on that date. Although the appellee argues that she never intended to permanently relinquish custody of her children, the evidence reveals that she executed a medical authorization and a power of attorney in favor of the grandparents effective for a period of three years. Although she obtained employment in January 1988, she did not request the return of her children until February 1988 when she learned that her husband had returned from military service to care for the children.

The duties of primary caretaker were performed by the appellant's parents in Doddridge County, West Virginia, from December 26, 1987, to February 1988, and the appellant himself then assumed the role from February 1988 through the initiation of the divorce proceedings in June 1988. Consequently, in an attempt to ascertain the primary caretaker of these children "until the initiation of divorce proceedings" in June 1988, we find that the role of primary caretaker was actually assumed by several different individuals during that time period. Neither parent can be sufficiently distinguished as the primary provider of care. Consequently, we find that the trial court erred in awarding the primary caretaker presumption to the appellee.

Absent a definite determination of a primary caretaker, the analysis shifts to an ascertainment of the best interests of the children. *Garska,* 167 W.Va. at 70, 278 S.E.2d at 363. After a thorough review of the record and the arguments of counsel, we hold that the best interests of the children would be served by awarding custody to the appellant. The appellant has had custody of the children since February 1988, with the exception of an approximate six-month period during when the appellee maintained custody. The children have developed a stable relationship with their father and grandparents in Doddridge County, West Virginia. The youngest child, now four-years of age, was only seventeen-months old when his mother delivered him to his paternal grandparents. Thus, the majority of his life has been spent with his father and grandparents. The children presently reside with their father in a home located a short distance from the home of their grandparents.

According to the testimony of Mary Dale Stover, a second-grade teacher for the oldest child, Alicia, the appellant has provided a stable and secure environment for his children. Ms. Stover further testified that Alicia excelled in both academics and behavior. The appellant has been diligent in attending all parent-teacher conferences and has exhibited genuine interest in the educational and emotional well-being of his children.

Upon review of the record, it appears that the appellant has provided his children with a stable and healthy environment. The children enjoy the benefit not only of their father's care, but also receive love and guidance from their paternal grandparents. With the exception of the approximate six-month period in which the appellee maintained custody of the children in Georgia, the children have lived in Doddridge County, West Virginia, since December 1987. Alicia is now nine years of age, Derek is five years of age, and Jeremy is four years of age. To remove the children from such an established environment would jeopardize their emotional stability

and would virtually destroy the relationship with their father and grandparents which has been built during the three years.

The best interests of the children are of paramount concern to this Court. The desires of the adult parties must be considered subordinate to the best interests of the children. Given the totality of the evidence, we believe that the best interests of the children would most adequately be served by awarding custody to their father. We further believe that the trial court erred in finding that the appellee was the primary caretaker prior to the initiation of these proceedings and in awarding custody of the children to the appellee on that basis. Accordingly, we reverse the judgment of the Circuit Court of Doddridge County and remand this case with directions that custody of the three infant children be awarded to the appellant and with further directions that the appellee be awarded extensive and meaningful visitation rights.

Reversed and remanded with directions.