566 S.E.2d 618

### In re DESTINY ASIA H.

### No. 30511, 30512.

Supreme Court of Appeals of West Virginia.

Submitted June 11, 2002.

Decided June 17, 2002.

Concurring and Dissenting Opinion of Justice Albright July 2, 2002.

Amy C. Crossan, Esq., Bouchillon, Crossan & Colburn, L.C., Huntington, West Virginia, Guardian ad Litem.

D. Scott Bellomy, Esq., Bellomy & Turner, Huntington, West Virginia, Attorney for Appellee, Shacara H.

Steven T. Cook, Esq., Huntington, West Virginia, Attorney for Appellee, Kimberly T.

Darrell V. McGraw, Jr., Attorney General, Teresa Brown, Assistant Attorney General, Charleston, West Virginia.

## PER CURIAM:

This is an appeal by the guardian ad litem for Destiny Asia H., an infant child, from a decision of the Circuit Court of Cabell County holding that Destiny Asia H. was not a neglected and abandoned child and holding that she should be returned to the custody of her natural mother, Shacara H.[1] The guardian ad litem, on appeal, claims that the evidence shows that Destiny Asia H. was neglected and abandoned and that the circuit court erred in ruling that she was not.

## I.

### FACTS

The child whose custody is in issue in this case, Destiny Asia H., was born in Florida on February 13, 2001. Shortly after her birth, Destiny's mother, Shacara H., met a lady in Florida named K.T. K.T. was a resident of Huntington, West Virginia, but was visiting her son at the time.

At a certain point, K.T. decided to return to West Virginia and invited Shacara H. and Destiny Asia H. to accompany her.

Upon arriving in West Virginia, Shacara H. and Destiny Asia H. originally lived with K.T. in K. T.'s home. Eventually, however, they moved out and moved into an apartment. In June 2001, Shacara H. decided to return to Florida. At the time, she told K.T. that she intended to return in about a week and asked if K.T. would care for Destiny Asia H. during her absence. K.T. agreed.[2]

---

1. Actually two petitions for appeal were filed in this matter, one by the guardian ad litem, and one by K. T., the individual who had actual custody of the child at the time of the institution of the original neglect and abandonment proceeding. Since the issues and facts are the same, the Court has treated the two petitions as a single appeal.

2. Before leaving, Shacara H. provided K.T. with a Power of Attorney authorizing her to act *in loco parentis*. Although the Power of Attorney extended from June 26, 2001, to June 26, 2005, it is clear from the record that the understanding between Shacara H. and K.T. was that Shacara would return in about a week.

Shacara H. did not return in one week, and, in fact, did not return during the following four months. Over that period of time, although she called K.T. approximately six times, she provided no financial support for Destiny Asia H., and she provided K.T. with no information regarding her whereabouts.

In October 2001, K.T. approached the West Virginia Department of Health of Human Resources to request financial assistance for Destiny Asia H. At the time, she indicated that it would be difficult for her to continue to care for Destiny Asia H. without such assistance.

Based on the information that the whereabouts of Shacara H. were at the time unknown, as well as the fact that she had been absent for approximately four months and had failed to provide K.T. with the means of contacting her, the Department of Health and Human Resources on October 29, 2001, filed an abuse and neglect petition alleging that Destiny Asia H. had been neglected and abandoned.

A preliminary hearing was held in the matter on November 5, 2001, and at that hearing, the circuit court ruled that there was probable cause for the taking of Destiny Asia H. The court also scheduled an adjudicatory hearing in the matter for January 14, 2002.

By the time of the adjudicatory hearing, some information regarding the whereabouts of Destiny's mother, Shacara H., had been developed and counsel for Shacara H. moved for a continuance to allow time for Shacara H. to travel from Florida to West Virginia so that she could be heard. The circuit court granted the motion, and the adjudicatory hearing was reset for January 28, 2002.

Shacara H. returned to West Virginia and attended the adjudicatory hearing on January 28, 2002. This was the first time she had returned to West Virginia since leaving in late June 2001. At the hearing, evidence was adduced describing how Shacara H. had met K. T., and how she and Destiny Asia H. had accompanied K.T. to West Virginia.

Additional evidence showed that Shacara H. had only rarely called to check on Destiny Asia H. between June 26 when she left West Virginia, and October 2001, when the neglect petition was filed, and that thereafter she had not called at all. Evidence was also introduced showing that she had not provided any financial support for Destiny Asia H. during the time of Destiny's stay with K.T. The evidence also showed that Destiny Asia H. was four and one-half months old when Shacara H. left for Florida, and that Shacara H. had not seen her for a full seven-month period thereafter.

After reviewing the evidence, the circuit court, while recognizing that Shacara H. had physically left West Virginia and Destiny Asia H., also noted that the child had been left in the care of K.T. who appropriately cared for her and had not neglected or abused her. The court stated: "The evidence before the Court is not sufficient to prove abandonment to any extent. Instead, what happened was a transfer of guardianship." The Court also found that the Department of Health and Human Resources had acted properly in taking custody of Destiny Asia H., but that its actions had been based on miscommunications.

Subsequent to the entry of the final order in the case, information was produced by the State of Florida relating to Shacara H. and her care of Destiny Asia H. in Florida. That information showed that Shacara H. suffers from a mental disability. The information also showed that in May 2001, Destiny Asia H. was hospitalized in Florida due to weight loss, apparently due to malnutrition, and that at that time she had not receive the appropriate shots. Additionally, there is also some suggestion that Shacara H. had been attending, but stopped attending, parenting classes.

In the present proceeding, the guardian ad litem and K.T. claim that the circuit court erred in failing to find Destiny Asia H. neglected and abandoned.

II.

STANDARD OF REVIEW

■ In *In Re: Beth Ann B.*, 204 W.Va. 424, 513 S.E.2d 472 (1998), this Court indicated that in a child abuse and neglect case the Court employs the two-pronged standard of

review set forth in Syllabus Point 1 of *McCormick v. Allstate Insurance Company*, 197 W.Va. 415, 475 S.E.2d 507 (1996):

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

## III.

## DISCUSSION

■ For the purposes of child abuse and neglect proceedings, the West Virginia Code defines as neglected child as a child:

Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian. . . .

W. Va.Code 49–1–3(h)(1)(A).

The facts in the present case show that Shacara H. left Destiny Asia H. temporarily in the custody of K.T. with the understanding that Shacara H. would return in about a week. She failed to return during that time, and, in fact, had not returned some four months later. Thus, the length of her absence before the bringing of the present proceeding was some fifteen to sixteen times what was contemplated when K.T. initially undertook to care for the child.

During the absence, Shacara H. maintained some sporadic contact with K.T. but provided nothing toward the support or care of the child. Eventually, the sporadic contact ceased, and Shacara H. failed to provide K.T. with information as to her whereabouts or as to how she could be contacted.

The circuit court, as has previously been stated, found that Shacara H. did not abandon Destiny Asia H. but transferred her "guardianship." In reviewing the facts presented, the Court believes that those facts show clearly and convincingly that initially Shacara H. did temporarily transfer custody to K.T. who, it appears from the evidence, adequately cared for the child. Thus, the evidence, in this Court's view, supports a finding that in June 2001, when Shacara H. initially returned to Florida, she did not abandon, or neglect, Destiny Asia H., as contemplated by W. Va.Code 49–1–3(h)(1)(A).

The facts also show clearly and convincingly that it was contemplated that the initial transfer was to be for a limited time only, and Shacara's absence extended far beyond her initially anticipated return date. If she had not returned precisely upon the date fixed for her return, but within a reasonable time thereafter, in the Court's view, there would be a factual question as to whether she had abandoned or neglected Destiny Asia H. However, Shacara's lengthy absence in the present case, in this Court's view, extended so far beyond the originally contemplated period as to throw into question her intent to return, her motivation to provide for the care of Destiny Asia H., and Destiny's actual future.

While there may have been an initial custodial arrangement, the evidence shows that that arrangement was to be of limited duration, and after the expiration of the limited period of time, there is no evidence that Shacara H. made any additional arrangement or showed any substantial interest in the welfare of the child. Eventually, she even ceased to contact K.T. or keep K.T. informed of her whereabouts.

Overall, this Court believes that the facts as developed show that Destiny Asia H. was abandoned and neglected, not when Shacara H. initially left for Florida, but when her stay exceeded what was contemplated and when she allowed the thread of potential contact between her and the child's actual care giver to break. Under the circumstances, this Court believes that the circuit court erred in failing to hold that Destiny Asia H. was an abused and neglected child within the meaning of the statute.

For the reasons stated, the judgment of the Circuit Court of Cabell County is reversed, and this case is remanded with directions that the circuit court enter an order granting the petition of the West Virginia Department of Health and Human Resources.

Reversed and remanded with directions.

Received the foregoing order this 8th day of July 2002, and entered the same in Order Book No. 146.

ALBRIGHT, Justice, concurring in part, and dissenting in part:

(Filed July 2, 2002)

While I concur with the majority's determination that Destiny should not be returned to her mother (Shacara H.), I must respectfully dissent from the majority's conclusion that the facts establish that Destiny was neglected within the meaning of West Virginia Code § 49-1-3(h)(1) (1999) (Repl.Vol. 2001). The statute is clear regarding what conduct amounts to neglect:

> (h)(1) "Neglected child" means a child:
>
> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or
>
> (B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian[.]

W.Va.Code § 49-1-3(h)(1)(A), (B).

Under these standards, the lower court was correct in determining that Destiny was not a "neglected child." *See id.* There is no indication in the record that the care Destiny received was inadequate at the time the petition was filed and she was residing with her guardian and custodian K.T., or that she was

then without the necessary food, clothing, shelter, supervision, or medical care. *Id.* K.T. was presumably taking good care of, or at least adequate care of, Destiny, as the lower court specifically found that "[t]here has been no showing of abuse or neglect on the part of the guardian, Kim T."

In its rush to approve this child's removal from her caretaker's home, the majority has concluded, with little discussion of the law, that Shacara S. abandoned Destiny for purposes of our neglect statutes. *See* W.Va. Code §§ 49-6-1 to -12 (Repl.Vol.2001). Unfortunately, the term "abandonment" is not defined within the sections of the Code that address abuse and neglect other than for purposes of an emergency taking situation. See W.Va.Code § 49-6-9 (1980) (Repl.Vol. 2001) (defining "abandoned" as "without supervision ... for an unreasonable period of time in light of the child's age and the ability to care for himself or herself in circumstances presenting an immediate threat of serious harm to such child"); cf. W.Va.Code §§ 48-22-102, -306 (2001) (providing definition of abandonment for purposes of adoption law and identifying conduct presumptively constituting abandonment). Given this statutory omission, this Court has on occasion looked to the definition provided in the adoption statutes for guidance in specific cases. *See State ex rel. Paul B. v. Hill,* 201 W.Va. 248, 496 S.E.2d 198 (1997) (involving issue of whether voluntary relinquishment of parental rights incident to adoption placement could constitute abandonment for abuse and neglect purposes). That definition identifies as abandonment "any conduct ... that demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child." W.Va.Code § 48-22-102.

Based on the mother's execution of a Power of Attorney and, apparently, the intermittent, albeit limited, contact that Shacara S. had with Destiny during the months she resided in Florida, the trial judge viewed the evidence in this case as not rising to the level of abandonment. While enunciating the proper standard for reversing the lower court's finding of fact, the majority fails to state that the lower court was clearly erroneous in its determination regarding the issue

of abandonment.[1] Interestingly, the majority suggests that factual issues arose regarding "her [Shacara H.'s] intent to return, her motivation to provide for the care of Destiny ... and Destiny's actual future." Rather, than remanding for a determination of those issues, however, this Court summarily concluded that abandonment had occurred.

The facts of this case demonstrate, as the lower court noted in its order,[2] that the statutes at issue do not expressly provide a method for dealing with the situation that was presented below. Certainly, the issues presented in the instant case demonstrate a flaw inherent to the system for providing financial assistance to care givers. Apparently, the DHHR determined that it could not provide K.T. any financial assistance in the care of the child, but could provide such financial assistance if the child were placed with other persons selected by the DHHR who were perfect strangers to this little child.

What the majority overlooks in its rush to rubberstamp Destiny's removal from the only continuous care givers she had known at the time the petition was filed,[3] is the critical issue of the child's psychological and emotional attachment to K.T. This Court has long advised the DHHR and the courts dealing with these matters that children cannot be plucked from one home environment, absent emergency situations that were not present here, without due consideration of the effects on the child and the child's attachment to caretakers and siblings. *See In re Brian D.*, 194 W.Va. 623, 638, 461 S.E.2d 129, 144 (1995) (recognizing that "a child has a right to continued association with those to whom he has formed an emotional bond") (citing *Honaker v. Burnside*, 182 W.Va. 448, 452–53, 388 S.E.2d 322, 325–26 (1989)). Yet, in this case, the child was apparently removed from K.T.'s home with little concern for these important issues that play an undeniably pivotal role in the child's formation as an individual.

Further troubling is the majority's use of a validly executed document transferring physical custody of Destiny to a guardian, ostensibly prepared not for the purpose of abandoning the child, but to secure the child's attainment of proper medical care, if necessary, and to alleviate any question of K.T.'s legal right to have Destiny in her

---

1. This case aptly illustrates the point made by Justice Starcher, who joins in this concurrence and dissent, in *State of West Virginia v. Julie G.*, 201 W.Va. 764, 500 S.E.2d 877 (1997), when he observed how a double standard appears at times to exist with regard to the level of deference this Court gives to circuit court decisions regarding neglect findings:

> When circuit judges determine that a child is neglected, or that parental rights be terminated, the decisions of this court often (and in my view quite properly) state that in these difficult cases we must give deference to the circuit court's perception and weighing of the evidence. Why? Because the judges see the people involved. The judges get a sense and feel of the situation and can size it up. Is this parent well-meaning and trying? Could the parent, with enough support, do a decent job? Look at the child—is it really fair to say that the child is neglected? Is it really fair to say that the parent is an abuser? Is it fair to separate a child from a parent, even when limited parenting skills are obvious? It's a tough call to make such determinations, and I think that it's a call that requires a face-to-face look at the people involved, to be done well.
>
> But when circuit judges say—based on the same sorts of assessments—that a child should *not* be found to be neglected, or that parental rights should *not* be terminated, that the court

should give the parent-child relationship another chance—then I sense that our decisions too often tend to find reasons why we shouldn't defer to or trust the circuit judge's judgment.

*Id.* at 775, 500 S.E.2d at 888.

In this case, the majority simply discarded the lower court's determination that Destiny had not been neglected under our law to expedite the process under which DHHR could obtain legal custody of the child. Engaging in statutory "end runs," such as that employed by the majority in this case to obtain the specific result of removing a child from his or her home, especially where no statutory basis for the removal exists, can only serve to harm both the child in the short term and the judicial system in the long run.

2. The lower court observed: "There is some confusion as to how to proceed in matters such as this. When someone asks, a petition o[f] abuse and neglect may be the only option, or the only way to handle a situation [such as that presented here by the guardian's request for financial assistance]."

3. Even during the first four and a half months of Destiny's life when her mother was present, K.T. was also present in Destiny's life for a month and a half of that time period.

physical custody. While the majority makes clear in its opinion that this document on its own was not evidence of Sharcara H.'s intent to abandon Destiny, my concern is that the decision will perhaps be relied upon to obtain rulings of abandonment, possibly without the proper statutory basis, rather than forcing the DHHR to go through the requisite statutory steps of proving that a child was in actuality "abused" or "neglected" within the statutory scheme established by the Legislature. *See* W.Va.Code §§ 49–6–1 to –12.

When the facts of this case are fairly examined, one is left with a definite sense that the DHHR has managed to obtain legal custody of Destiny with no proper showing that the child was "abused" or "neglected" under our law. *See* W.Va.Code § 49–1–3. Any conclusion that the mother in this instance never intended to return and reclaim her child amounts to rank speculation on the record before us. In my judgment, it is simply wrong for this Court to sanction, even indirectly, a finding of abandonment that is grounded in fact on the proper exercise by the mother of her legal right and duty to provide for the care of her minor child during an anticipated absence, especially in light of the fact that there were no findings of improper care related to the guardian's (or custodian's) physical custody of the child.[4] Obviously, if actual evidence of neglect had been present, this would be an open and shut case. Paradoxically, the child was removed from the home of the only care givers she knew based primarily on the care givers's professed need of financial assistance and yet, the statutory definition of a "neglected child" expressly excludes a determination of neglect based on "lack of financial means on the part of the parent, guardian or custodian." W.Va.Code § 49–1–3(h)(1)(A).

My final concern involves the manner in which the majority grants relief to the DHHR. Typically, in a case where the underlying decision of the circuit court included a finding of no abuse and/or neglect, and this Court determined that a reversal of such decision was warranted, the matter would be remanded with specific instructions that the lower court enter an order adjudicating the child to be abused and/or neglected. The majority opinion lacks any such direction. This is of concern as this Court cannot *sua sponte* make such a factual finding. Also missing from the relief delineated in the majority opinion is any direction for the circuit court, upon its entry of a finding of neglect, to proceed to the dispositional phase of such litigation. *See* W.Va.Code § 49–6–5. As we observed in *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999), "neither this Court nor circuit courts can simply ignore mandatory procedural requirements." *Id.* at 486, 525 S.E.2d at 677.

I am authorized to state that Justice STARCHER joins in this concurring and dissenting opinion.

---

**4.** A "benefit" to the DHHR that obtains when a child is removed from a home based on abandonment is that the agency does not have to "make reasonable efforts" to preserve the family unit for temporary custody purposes. *See* W.Va.Code § 49–6–3(d).