708 S.E.2d 479

**In re RICHARD P. and Devon P.**

**No. 34751.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 26, 2010.

Modified Opinion Filed July 9, 2010.

Concurring Opinion of Chief Justice Davis
Sept. 3, 2010.

shall be entered in felony prosecutions within eight (8) months of the date of the indictment or information.

Vickie L. Hylton, Esq., Fayetteville, WV, Attorney for Appellants.

WORKMAN, Justice:

The Appellants, Cary P. and Jennifer P. (jointly "the Appellants"), reside together in Fayette County, West Virginia, with Jennifer's biological children, Richard P. and Devon P.[1] On July 11, 2008, the Appellants filed a "Petition for Appointment of a Legal Guardian," in the Family Court of Fayette County, West Virginia, seeking to appoint Cary as the legal guardian of Richard and Devon. The Appellants do not wish to interfere with Jennifer's parental rights but instead seek to allow Cary, as a legal guardian, to make medical, educational and other legal decisions for the children when Jennifer is unavailable.

The family court, believing that the petition included an abuse and neglect allegation, transferred the case to the Circuit Court of Fayette County. After conducting a hearing and receiving further briefing from the Appellants, the circuit court denied the petition, finding that the appointment of a guardian for the children was not warranted under the circumstances presented in this case. On appeal, the Appellants waived oral argument, and the case was submitted on the Appellants' brief.[2] Having considered that brief,

---

1. The Court follows its customary practice in cases involving minors of using only the first initial of the parties' last names, in order to protect the privacy of the minors. *See, e.g., In re Emily B.*, 208 W.Va. 325, 329 n. 1, 540 S.E.2d 542, 546 n. 1 (2000).

2. Although the West Virginia Department of Health and Human Resources ("DHHR") is designated as the Appellee in this case, it did not oppose the Appellants' petition below and has not filed a brief in this appeal.

the record in the case, and all relevant legal material, this Court affirms the circuit court's Order.

## I.

### FACTS AND PROCEDURAL HISTORY

Richard P. and Devon P. are both minors under the age of eighteen; Richard is approximately thirteen years old and Devon is approximately eleven years old. The boys' biological father, Richard A., resides in Indiana. He and Jennifer separated when the boys were very young, and he is no longer in their lives.[3] Jennifer, Cary and the children have resided together since July 1999, at which time the boys were approximately three and one, respectively. Both Jennifer and Cary have acted as parents to the boys. Jennifer has consistently worked outside of the home, while Cary is a homemaker.

On July 11, 2008, the Appellants filed a "Petition for Appointment of a Legal Guardian," in the Family Court of Fayette County, seeking to have Cary appointed as the boys' legal guardian.[4] Jennifer did not seek to relinquish any of her parental rights; rather, the Appellants sought to add Cary as a legal guardian, thus giving her the ability to make medical and educational decisions for the boys when Jennifer is unavailable. In

the petition, the Appellants assert that Cary is a psychological parent to the boys and that legalizing their relationship would create stability for the children in the event that something happened to Jennifer and would protect the children if Richard A. ever attempted to reassert his parental rights.[5] They further contended that appointing Cary as a legal guardian would clarify, before an emergency occurred, Jennifer's wishes for the care of her children.[6]

The family court, concluding that the petition included an abuse and neglect allegation, transferred the petition, pursuant to Rule 48a of the West Virginia Rules of Practice and Procedure for Family Court, to the Circuit Court of Fayette County, West Virginia, on July 11, 2008. On July 18, 2008, the Circuit Court of Fayette County conducted a hearing on the petition. In addition to the Appellants, Tom Steele, counsel for the DHHR, and Robin Holland, a Child Protective Services worker for the DHHR, were also present at that hearing. Mr. Steele informed the court that the DHHR supported the Appellants' petition and urged the Court to appoint Cary as the children's guardian. The circuit court, however, questioned the need for a guardian given that Jennifer, the biological mother, was alive, healthy and capable of caring for the children. The circuit court declined to rule on

---

3. After Jennifer divorced Richard A., the boys initially maintained contact with their father, visiting him occasionally. In 2005, Richard A. was charged with sexually molesting his sons. He eventually pled guilty to "dissemination of matter harmful to minors," and the molestation charges were dropped. He was convicted, however, of molesting the thirteen-year-old daughter of his then girlfriend. Following the 2005 charges, the boys ceased all contact with their father. Richard A. does not pay child support and the Appellants allege, without documentation, that pursuant to Indiana statute, his parental rights have been terminated.

As a consequence of the events with his father, Richard P. began acting out in school, exhibiting violent behaviors, and he has now undergone extensive psychological treatment, including inpatient hospitalization. As a result of these problems, the DHHR investigated the family. All of the DHHR's reports, however, indicate that Jennifer and Cary are "nurturing parents" who are "very supportive" of their children. The DHHR has consistently found no risk of abuse or neglect in the home. Devon P., the younger of the

brothers, appears to be well adjusted and is not suffering the same consequences of their father's actions as Richard P.

4. The petition also sought a legal name change for Richard P., who was named after his father, Richard A. While undergoing psychological treatment, Richard P. became upset over having the same name as his father and decided, with Jennifer and Cary's support, to change his first name. The circuit court granted this name change in October 2008, and that Order is not at issue in this appeal.

5. Because the record contains no documentation or explanation of the alleged termination under Indiana law of Richard A.'s parental rights, the Court is unable to discern whether the Appellants' concerns in this area are legitimate.

6. The petition indicates that the Appellants ultimately want Cary to legally adopt Richard and Devon and that they are seeking the guardianship as an interim measure.

the petition at that hearing, instead taking the matter under advisement.

Following the hearing, the Appellants submitted an additional brief, entitled "Response to Court's Query," further outlining their reasons for seeking the guardianship despite Jennifer's current good health and well-being. In that brief, the Appellants pointed out that Jennifer's employment with an ambulance service frequently renders her unreachable for significant periods of time. Thus, they asserted, the children's best interests would be served by giving Cary legal guardianship, so that she could make legal, medical and other decisions for the children when Jennifer is unavailable. The Appellants provided three examples of incidences that have occurred as a consequence of Cary not having the legal ability to make medical decisions for the children, but which could have been avoided had Cary been the children's legal guardian.

In the first incidence, Devon had fallen and injured his arm. Cary took him to the emergency room at the Plateau Medical Center, but the hospital refused to treat him because Cary could not legally consent to medical treatment. Jennifer was at work at the time, transporting a patient to Morgantown, West Virginia. Consequently, Devon did not receive treatment until a day later when Jennifer was back in Fayette County and could take him to the emergency room herself.

In another instance, which occurred while Richard was hospitalized for psychological treatment, Richard had been prescribed a medication that was causing him to shake. The hospital called the family home seeking consent to remove him from the medication. Jennifer was not home and Cary gave consent; the hospital, however, would not accept the consent from Cary, and continued to administer the medication until Jennifer, who had been at work at the time, was able to contact the hospital and give consent herself.

Finally, on a third occasion, Richard had been admitted to another hospital for psychiatric examination and treatment. The hospital would not allow Cary to visit Richard during his stay, and would not provide her with information about his treatment, care or progress because she was not his legal guardian. This occurred even though Jennifer was present at the hospital and requested that Cary be allowed to have such information and to visit with Richard.

The Appellants assert that all of these situations occurred despite the fact that Jennifer had executed a power of attorney permitting Cary to make medical decisions for the children in Jennifer's absence. The record contains a document entitled "Medical Power of Attorney," granting Cary the power to consent to health care decisions for Jennifer, when Jennifer is unable to do so for herself. In addition, the record includes a document entitled "Durable Power of Attorney," which names Cary as Jennifer's attorney-in-fact, and grants Cary full power over the (1) disposition of property, (2) collection of debts, (3) acquisition of property, (4) litigation, representation, and employment of assistance, (5) endorsing checks and depositing funds, (6) safe deposit boxes, (7) savings bonds, (8) borrowing money, (9) executing government vouchers, (10) tax returns, and (11) automobiles, trucks, and other personal property. It is unclear from the briefs and the record whether these two documents were presented by the Appellants to the medical institutions, or whether the Appellants had an additional power of attorney specifically authorizing Cary to make medical decisions for Richard and Devon in Jennifer's absence.

On August 14, 2008, the circuit court issued an Order denying the Appellants' petition. In that Order, the circuit court found that the Appellants could "accomplish their goals" through West Virginia Code § 44–10–1 (2000), which permits a biological parent to name, in their will, the person who is to be the guardian of their minor children in the event of their death. The circuit court further found that appointing Cary as a legal guardian "is not necessary at this time," stating that "the appointment of a non-relative as guardian while the custodial biological parent is alive, able and willing to care for the children has great potential to cause unnecessary difficulties in the future for both the biological mother and the minor children named herein." The circuit court then con-

cluded that such appointment was not in the best interests of the children.

## II.

### STANDARD OF REVIEW

On appeal, the Appellants argue that (1) the family court improperly transferred their petition for guardianship to the circuit court, and (2) the circuit court improperly interpreted the guardianship statute to require that certain factual circumstances exist as a prerequisite to appointing a legal guardian, specifically that the minor's biological parent or other legal guardian be unable or unwilling to properly care for the minor.

"Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). However, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard." Syl. Pt. 4, in part, *Burgess v. Porterfield*, 196 W.Va. 178, 179, 469 S.E.2d 114, 115 (1996). The Court, therefore, reviews the family court's transfer of the guardianship petition and the circuit court's interpretation of the guardianship statute de novo, but reviews the circuit court's ultimate conclusion in this case for an abuse of discretion.

## III.

### DISCUSSION

#### A. Transfer of the Guardianship Petition

As an initial matter, the Appellants challenge the family court's transfer of their guardianship petition to the circuit court. In its "Order of Removal of Infant Guardianship Case to Circuit Court," the family court found, following a preliminary review, that the petition was based, in whole or in part, on allegations of abuse and neglect. Thus,

pursuant to Rule 48a of the Rules of Practice and Procedure for Family Court,[7] it transferred the petition to the Circuit Court of Fayette County.

The statute under which the Appellants filed their guardianship petition, West Virginia Code § 44-10-3 (Supp.2009) (effective June 14, 2006), indicates that a legal guardian may be appointed by *either* the family court or the circuit court in the county in which the minor resides. Rule 48a(a) of the Rules of Practice and Procedure for Family Court, however, limits the family court's authority by providing that:

> [i]f a family court learns that the basis, in whole or part, of a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3, is an allegation of child abuse and neglect, as defined in W. Va. Code § 49-1-3, then the family court before whom the guardianship case is pending, shall remove the case to the circuit court for hearing.... At the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence.

In syllabus point seven of *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300, this Court explained that Rule 48a(a)

> requires that if a family court presiding over a petition for infant guardianship brought pursuant to W. Va.Code § 44-10-3 learns that the basis for the petition, in whole or in part, is an allegation of child abuse and neglect as defined by W. Va. Code § 49-1-3, then the family court is required to remove the petition to circuit court for a hearing thereon.

The Court in *Abbigail Faye B.* further held that when addressing such petitions, a circuit court must conduct a hearing on the allegations of abuse and neglect and may only grant the guardianship petition if such allegations are supported by clear and convincing evidence. 222 W.Va. at 469, 665 S.E.2d at 303.

7. The family court Order removing the guardianship petition to circuit court incorrectly cites "Rule 47a" of the Rules of Practice and Procedure for Family Court as its basis for removal, rather than Rule 48a(a). In fact, Rule 47(a) provides for the appointment of guardian ad litems in family court cases, while Rule 48a(a) establishes the basis for removing a guardianship petition to circuit court.

In the instant case, the Appellants' petition raises the issue of the prior abuse by Richard and Devon's father as one of several grounds for the guardianship. Specifically, in the petition, the Appellants set forth information about Richard A., including his abuse of Richard and Devon and his subsequent convictions, and they explain that Richard A. no longer pays child support and that a protective order prevents him from contacting the children. The Appellants argue that because Richard A. is an unfit parent, the court is not required to notify him of the guardianship proceeding. Moreover, the Appellants use the prior abuse by Richard A. as a basis to support the petition, arguing that appointing Cary as the children's guardian would help prevent Richard A. from ever successfully reasserting parental rights.

On appeal, the Appellants contend that these references to the prior abuse by Richard A. are not new allegations of abuse or neglect which must be proven by clear and convincing evidence as required by Rule 48a(a) and *Abbigail Faye B.* Thus, the Appellants argue that the family court was not required to transfer the petition to circuit court and erred in doing so.

At the hearing following the removal of the petition, the circuit court noted that the allegations of abuse and neglect contained within the petition were not alleged to be presently existing, nor were the children in any present danger of abuse or neglect. Thus, the circuit court was not required to make a finding of abuse or neglect by clear and convincing evidence. Despite this acknowledgment, the circuit court did not address whether the family court's transfer of the petition to the circuit court constituted error, nor did it consider whether the case should be returned to the family court for further consideration. Importantly, the Appellants did not raise this issue with the circuit court either.

 "In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syl. Pt. 1, *Mowery*

*v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971). Here, the issue is not jurisdictional in nature because West Virginia Code § 44–10–3 provides that *either* the family court or the circuit court in the county in which the minor resides may appoint a suitable person as a minor's guardian. Consequently, family and circuit courts have concurrent jurisdiction over appointing guardians under § 44–10–3 and, thus, the circuit court possessed jurisdiction to rule on the petition in this case. This Court, therefore, will not consider this issue which was not properly raised below.

### B. The Guardianship Petition

The principle issue in the instant appeal is whether the circuit court erred in denying the Appellants' guardianship petition. Specifically, the Appellants contend that the circuit court improperly interpreted the infant guardianship statute to require, as a prerequisite to appointing Cary as the boys' legal guardian, that Jennifer be unable or unwilling to care for her children.

The statute on which the Appellants base their petition for guardianship, West Virginia Code § 44–10–3, entitled "Appointment and revocation of guardian by county commission," [8] vests family and circuit courts with the authority to appoint guardians for minors. The statute does not describe the types of situations in which such appointments are appropriate; rather, it simply states that a family or circuit court *may* appoint a suitable person as a minor's guardian. Specifically, the statute provides that

> [t]he circuit court or family court of the county in which the minor resides, or if the minor is a nonresident of the state, the county in which the minor has an estate, *may* appoint as the minor's guardian a suitable person. The father or mother shall receive priority. However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian.

---

8. Prior to 2004, West Virginia Code § 44–10–3 (Supp.1999) authorized county commissions to appoint guardians for minors. Although the Legislature, in 2004, amended the statute to transfer that authority to family and circuit courts, it did not change the title of the statute.

W. Va.Code § 44–10–3(a) (emphasis added). Thus, the plain language of the statute neither requires nor prohibits the appointment of a legal guardian for a minor as an addition to, rather than a replacement for, the minor's biological parent or parents.

■ It is well-settled that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). Although the statute at issue in this case is silent as to whether a family or circuit court may appoint a guardian in situations such as the one presented in this case, the statute clearly evinces a legislative intent to provide family and circuit courts with discretion in making such determinations. By stating that family and circuit courts *may*, rather than must, appoint a suitable person as a guardian for a minor, the Legislature granted family and circuit courts discretion in determining when the appointment of a guardian is appropriate.

■ Here, after reviewing the Appellants' petition for guardianship, the circuit court determined that appointing Cary as a guardian was not necessary, because Jennifer is "alive, able and willing to care for the children." It then denied the petition, noting that appointing a guardian under these circumstances could potentially create unnecessary difficulties in the future. Contrary to the Appellants' assertions, the circuit court did not wrongly interpret the guardianship statute to require that certain prerequisites be met for the appointment of a guardian, but rather the circuit court exercised the discretion afforded it by the Legislature to determine that the appointment of a guardian was not necessary in this case.

■ As more fully explained hereafter, alternative remedies exist, including the recently enacted "Caregiver's Consent Act," which provide alternate avenues by which the Appellants can address their legitimate concerns. Accordingly, under the circumstances presented in this case, and in light these alternative remedies, the circuit court did not abuse its discretion in denying the Appellants' petition.[9] The Court, therefore, affirms the decision of the circuit court.

## C. Alternative Use of a Power of Attorney

As noted, the Appellants have expressed legitimate concerns regarding Cary's ability to make decisions for the boys in emergency situations. The facts in this case clearly demonstrate that, because Jennifer often travels for work while Cary stays at home, Cary is frequently the parent who first responds to medical, educational and other emergencies in the family. Cary, therefore, needs to be able to make decisions for the children in these situations.

9. Because circuit and family courts may be utilizing West Virginia Code § 44–10–3 to grant temporary guardianships to non-parents where a parent is absent, in order to stabilize the child's custodial situation or assure his receipt of benefits, the Court is hesitant to embark on any interpretation of existing law that would limit a family or circuit court's authority in this area. Such interpretation is unnecessary for resolution of the instant issue. Further, any analysis of the breadth of a family or circuit court's authority to grant guardianships to non-parents should only be made after such issues are fully briefed and argued, which has not occurred in this case. There is concern, however, that current interpretations of statutory and case law may permit family and circuit courts to appoint a legal guardian for a minor over the objection of a natural, unoffending parent whose parental rights have not been terminated. The appointment of a legal guardian for a child in such a situation could arguably divest the natural parent of his or her parental rights without meeting the legal standards required in termination proceedings. To be clear, however, the Court recognizes that situations do exist where a guardianship may be appropriate and in the child's best interests, even when there is a natural parent whose rights have not been terminated. *See, e.g., In Re Nelson B.*, 225 W.Va. 680, 695 S.E.2d 910 (2010).

Because these significant issues are not raised or briefed in the instant case, and because addressing them is unnecessary for resolution of the issues here, the Court declines to do so at this time. However, these are significant questions that the Legislature should perhaps review and address. Of course, in enacting any changes, the Legislature should be mindful of the large body of case law holding that the best interests of the child are always of predominate concern. *See, e.g.,* Syl. pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

Under existing West Virginia law, the Appellants can achieve these goals through alternative means. First, as the circuit court noted, under West Virginia Code § 44–10–1, entitled "Testamentary Guardians," Jennifer may name Cary in her will as the individual to become the children's guardian in the event of Jennifer's death. In addition, as further explained herein, by executing a proper power of attorney and by utilizing a recently enacted West Virginia law known as the "Caregivers Consent Act," the Appellants can ensure that Cary has the authority necessary to properly care for the boys in Jennifer's absence.

On appeal, the Appellants argue that they had, in fact, executed a power of attorney authorizing Cary to make healthcare decisions for the boys in Jennifer's absence, but that several medical providers have refused to honor the power of attorney, thus preventing Cary from making such decisions or obtaining medical information about the children. As noted previously, the record on appeal includes two power of attorney documents. Neither of these documents, however, specifically permit Cary to make decisions for the children. Rather, the Appellants have executed a medical power of attorney which designates Cary to make medical decisions for Jennifer, in the event of Jennifer's incapacity, and a Durable Power of Attorney, which specifically grants Cary authority to make a variety of economic and property decisions. The record does not contain a power of attorney specifically granting Cary authority to make decisions for the children.

 A "power of attorney" is "an instrument granting someone authority to act as agent or attorney-in-fact for the grantor. An ordinary power of attorney is revocable and automatically terminates upon death or incapacity of the principal." *Blacks Law Dictionary* 1290 (9th ed.2009). Although no West Virginia statute specifically provides for an "ordinary" power of attorney by which a parent may grant authority over the care of their children to another adult, the authority to grant such powers exists at common law. While this Court has never directly addressed the legal basis for such powers of attorney, it has recognized on several occa-sions that such authority may be granted. *See, e.g., In re Destiny Asia H.,* 211 W.Va. 481, 566 S.E.2d 618 (2002) (acknowledging a power of attorney executed by a parent who left her child temporarily with a friend, which authorized the friend "to act *in loco parentis*"); *Baugh v. Merritt,* 200 W.Va. 393, 395, 489 S.E.2d 775, 777 (1997) (remanding the case to the lower court for a determination of the parties' intent in executing a document entitled "Special Power of Attorney and Voluntary Appointment of Guardian"); *Efaw v. Efaw,* 184 W.Va. 355, 357, 400 S.E.2d 599, 601 (1990) (considering, as part of a determination of who had been the children's primary caretaker, a power of attorney authorizing the children's grandparents to make medical and other decisions for the children).

 Although the record is unclear as to whether the Appellants had executed this type of power of attorney, to prevent any future confusion, the Court now clarifies that, at common law, a parent or legal guardian may transfer medical, educational, and other legal decision-making authority for his or her child or ward, to another adult through the execution of a power of attorney. Such instruments are revocable and automatically terminate upon disability or incapacity of the principal.

Moreover, a recently enacted law provides an additional avenue by which Jennifer may authorize Cary to make medical decisions for the boys. In the 2010 Legislative Session, the West Virginia Legislature passed the "Caregivers Consent Act," West Virginia Code § 49–11–1 to 10 (2010) (effective ninety days from March 8, 2010). This Act permits a "caregiver," who is an adult over the age of eighteen and is a relative by blood, adoption or marriage to a minor, or who has resided with a minor continuously during the immediately preceding six month period, to consent to health care and treatment on behalf of the minor, if the caregiver possesses an adequate affidavit. *Id.* §§ 49–11–2, –3. Such affidavit must provide the caregiver's name, address, birth date, and relationship with the minor, as well as the minor's name, birth date, and length of time residing with the caregiver. *Id.* § 49–11–5. In addition, the affidavit must be signed by the caregiver

under oath, and by the minor's parent or guardian, consenting to the caregiver's authority. *Id.* The parent or guardian's signature is not necessary, however, if they are unavailable despite the caregiver's attempts to locate them and seek their permission. *Id.* The affidavit is valid for one year, or until the minor no longer resides with the caregiver, which ever is less. *Id.* § 49–11–6(b). In addition, a parent or guardian may rescind the affidavit by writing at any time. *Id.* § 49–11–6(a).

Accordingly, pursuant to the Caregiver's Consent Act, an adult over the age of eighteen who is not legally related to a minor, but who has resided continuously with the minor for the immediately preceding six month period, may consent to health care and treatment on behalf of the minor, so long as that adult possesses an adequate affidavit, as set forth in that Act. Because Cary has resided continuously with the boys for more than the most recent six-month period, it appears that, under the Caregivers Consent Act, the Appellants may execute an affidavit permitting Cary to consent to health care and treatment for the boys. *See id.* §§ 49–11–2, –3. The execution of such affidavit, combined with a power of attorney and the testamentary designation of Cary as the children's guardian in the event of Jennifer's death, should allow the Appellants to substantially achieve the practical objectives that they had hoped to achieve through a guardianship appointment.

## IV.

### CONCLUSION

For the reasons stated herein, the Court affirms the final Order of the Circuit Court of Fayette County, West Virginia, entered on August 14, 2008, denying the Appellants' petition for guardianship.

Affirmed.

DAVIS, Chief Justice, concurring:

(Filed Sept. 3, 2010)

I agree with the result obtained by the majority of the Court, and I concur that,

pursuant to W. Va.Code § 44–10–3 (2006) (Repl.Vol.2010), the decision of whether a guardian should be appointed for a minor child in a particular case rests within the sound discretion of the presiding court. Nevertheless, I feel compelled to write separately to reiterate my concerns regarding the inadequacy of the guardianship statutes currently in place that fail to consider the unique circumstances of modern-day families and leave such parents with little assurance that their children will be sufficiently provided for in an emergency situation.

Throughout its jurisprudence, the Court frequently has acknowledged that a parent has the right to the custody of his/her child. *See, e.g.,* Syl. pt. 1, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973) ("In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."); Syl., *Whiteman v. Robinson,* 145 W.Va. 685, 116 S.E.2d 691 (1960) ("A parent has the natural right to the custody of his or her infant child, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.").

Attending such custodial rights is the parent's corresponding responsibility to make decisions to promote and ensure his/her child's well-being, including making provisions for the child's care in the event of an emergency. Although such arrangements necessarily must comport with a child's best interests and are presumed to be made by a parent in accordance therewith,[1] providing for a child's best interests and well-being in

---

1. *See, e.g.,* Syl. pt. 3, in part, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be pro-

tected, the primary goal ... in all family law matters ... must be the health and welfare of the children.").

anticipation of an emergency situation is not always easily achieved as is evidenced by the presence of the case *sub judice* before this Court. While the instant proceeding arose in the context of a less traditional family structure, the concerns expressed by Jennifer and Cary might easily have occurred in any number of typical American households. Oftentimes, a child's parent is requested to sign a form authorizing another person to obtain medical care for a child as a prerequisite to the child's participation in school, sports, extracurricular, or religious activities. However, a seeming double-standard exists when, as here, a parent's attempt to give another person the authority to seek medical care for his/her child is not heeded, arguably because such authorization was not provided on an "official" childcare authorization form such as would be used by schools and sports, extracurricular, and religious organizations.

In still other families, as with the family involved in this case, one of the child's parents might work very far from home, or even out of the country, as with the case of a tractor trailer driver or deployed military personnel. The parent remaining at home in both such families understandably would want to make provisions for his/her child should something happen to the home-based parent given the delay in contacting the off-site parent. Appointment of an alternate formal guardian pursuant to W. Va.Code § 44–10–3 is not always viable because it is rather invasive of the parents' parental rights, yet the necessity of executing decision-making documents that will be honored by medical, educational, and other facilities is of real concern to these families. Similar problems arise in households in which the children have only one residential parent—either because the other parent is deceased or because the other parent's parental rights have not been exercised or have been terminated. In these families, what happens if the remaining parent becomes incapacitated and cannot care for the children or if that parent is out of town and cannot be reached? Does the law of this State enable this parent to adequately plan for such a contingency?

While the Legislature has made significant inroads in recent months to accommodate a parent's need to provide for his/her children's medical care in the event of an emergency through its enactment of the Caregivers Consent Act, W. Va.Code § 49–11–1 *et seq.*, more certainty and direction is needed to ensure that a parent's authorization of another to act on his/her behalf for his/her child's well-being will be respected by medical, educational, and legal authorities. This Court, too, through its recognition of a power of attorney as a method by which a parent may delegate medical, educational, and legal decision-making authority regarding his/her child to another adult gives parents substantial power to plan for their children's safety and well-being in the event of an emergency. With the promulgation of this new statutory law and the Court's decision of this opinion, I fervently hope that other families will not have to endure the turmoil that Jennifer and Cary have undergone, all in an effort to provide for the best interests of their children. However, whether either an affidavit prepared in accordance with the Caregivers Consent Act or a power of attorney executed pursuant to this Court's holding will satisfy the demands of cautiously wary educational, medical, and legal institutions to actually permit a non-parent to exercise such delegated decision-making authority remains to be seen. While the law of this State is evolving to recognize the changing dynamics of modern families and the arrangements they wish to make to provide for unforeseen contingencies, many institutions have not yet embraced the accommodations that are required to carry out these parents' legally enforceable decisions for the care of their children.

As a final matter, I would be remiss if I did not also comment on the Court's seeming reluctance, in footnote nine of the majority's opinion, to embrace the discretion afforded to courts to appoint guardians for minor children. As clearly delineated in the guardianship statute, *see* W. Va.Code § 44–10–3, and as I pointedly held in Syllabus point 6 of *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008), courts have the discretion to determine when a child's best interests require the appointment of a guardian. *See* W. Va.Code § 44–10–3(a) (2006) (Repl.Vol. 2010) ("The circuit court or family court of the county in which the minor resides, or if

the minor is a nonresident of the State, the county in which the minor has an estate, *may* appoint as the minor's guardian a suitable person." (emphasis added)). *See also* Syl. pt. 6, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008) ("Pursuant to the plain language of W. Va.Code § 44–10–3(a) (2006) (Supp.2007), the circuit court or family court of the county in which a minor resides *may* appoint a suitable person to serve as the minor's guardian. In appointing a guardian, the court shall give priority to the minor's mother or father. 'However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian.' W. Va.Code § 44–10–3(a)." (emphasis added)). This discretion is clearly provided for in the governing statutory law and should be accepted without question.

It goes without saying that the law dictating precisely when a guardian should be appointed for a minor child is murky and does not contemplate all of the nuances of today's modern family. Although custodial placements are not directly at issue in this case, the majority's reticence to permit courts to appoint guardians in necessary circumstances may thwart a court's ability to honor a child's best interests by prematurely thrusting him/her into a custodial placement with a parent or another adult with whom the child does not have an established relationship. For example, a child may be living with one parent and have little or no contact with his/her other parent who moves out of state following the parents' divorce. If the child's residential parent dies, becomes incapacitated, or otherwise becomes unfit to care for the child, and if the non-residential parent is fit to have the child's custody, the law governing child custody directs that child's best interests are best served by a gradual transition to the non-residential parent's custody. *See* Syl. pt. 3, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991) ("It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives."). The appointment of a guardian under such circumstances would serve to accomplish this transition by bridging the gap between the former residential parent's custody and the subsequent non-residential parent's custody. Such a guardian might simply be a grandparent with whom the child has an exceptionally close relationship and with whom the child previously has resided. In this scenario, the appointed guardian might not be afforded the full gamut of parental rights but the guardian would be vested with the ability to make decisions on the child's behalf to ensure his/her safety and well-being during the period of transition. If courts are not afforded the discretion—granted to them by statute—to appoint guardians, the gradual transition of custody most befitting the child's best interests could not be accomplished in such a case. Therefore, I urge that any decisions or changes in the law regarding the propriety of guardianship appointments be made with extreme caution to ensure that innocent children do not become hapless victims of the laws that are intended to provide them with safety and security.

Although progress has been made through the recent decisions of this Court to clarify the circumstances in which the appointment of a guardian is appropriate and by the Legislature with its promulgation of the Caregivers Consent Act, additional legislative action must be taken to further clarify the process by which laypersons may delegate medical, educational, and legal decision-making authority for their children in the event of an emergency. Until such further guidance is provided, and heeded by the medical, educational, and legal institutions to whom parents direct such permission, I remain cautiously optimistic about families' abilities to adequately plan for the safety and well-being of their children should an emergency arise.

For the foregoing reasons, I respectfully concur in the majority's decision in this case.